09-5270-cv (L)
Amorosa v. AOL Time Warner

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, at 500 Pearl Street, in the City of New York, on the 2nd day of February, two thousand eleven.

Present:    JOHN M. WALKER, JR.,
            CHESTER J. STRAUB,
            ROBERT A. KATZMANN,
                        *Circuit Judges*.

_____

DOMINIC F. AMOROSA,

                *Plaintiff-Appellant*,

CHRISTOPHER GRAY,

                *Non-Party-Appellant*,

                - v. -                    No. 09-5270-cv (L); 10-699 (Con)

AOL TIME WARNER INC., AMERICAN ONLINE, INC., PAUL T. CAPPUCIO, STEPHEN M. CASE, DAVID M. COLBURN, ERIC KELLER, J. MICHAEL KELLY, GERALD M. LEVINE, KENNETH J. NOVACK, WAYNE H. PACE, ROBERT W. PITTMAN, STEPHEN E. RINDER, JOSEPH A. RIPP, TIME WARNER INC., formerly known as AOL TIME WARNER CABLE, INC., BERTELSMANN AG,

                *Defendants*,

ERNST & YOUNG LLP,

                *Defendant-Appellee*.

_____

For Plaintiff-Appellant and
Non-Party-Appellant:                    CHRISTOPHER J. GRAY, Law Offices of
                                        Christopher J. Gray, P.C., New York, NY


For Defendant-Appellee:                 BRUCE M. CORMIER (Robert B. Hubbell, Gibson
                                        Dunn & Crutcher LLP, Los Angeles, CA, *on the
                                        brief*) Ernst & Young LLP, Washington, DC



Appeal from the United States District Court for the Southern District of New York (McMahon, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

In these consolidated appeals, Plaintiff-Appellant Dominic F. Amorosa appeals from a final judgment entered on November 30, 2009 by the District Court of the Southern District of New York (McMahon, *J.*), granting defendant Ernst & Young's ("E&Y") motion to dismiss, and Non-Party-Appellant Christopher J. Gray appeals the district court's grant of E&Y's motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). We assume the parties' familiarity with the facts and procedural history of the case.

Amorosa purchased common stock in America Online ("AOL") prior to its merger with Time Warner Inc. After allegedly fraudulent accounting practices at AOL and the newly merged company AOL-Time Warner ("AOLTW") came to light, he brought suit, alleging (1) violations of Section 11 of the Securities Act of 1933 ("Securities Act"); (2) violations of Sections 14(a) and 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"); and (3) state law claims of aiding and abetting a breach of fiduciary duty, common law fraud, and aiding and abetting common law fraud. On appeal, Amorosa contends that the district court erred in (1) dismissing

2

his Section 14(a) and 10(b) claims for failing to adequately plead loss causation; (2) dismissing his Section 11 claim as (a) time-barred and (b) lacking in merit because E&Y would be able to establish lack of loss causation as an affirmative defense; (3) dismissing Amorosa's federal "holder" claim, based on the theory that he retained securities based on E&Y's purported misrepresentations, as unavailable under federal law; and (4) finding that his state law claims were preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). Gray contends that the district court abused its discretion in imposing sanctions under Rule 11.

We review *de novo* the district court's dismissal of Amorosa's complaint. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 167 (2d Cir. 2005). This Court may "affirm the district court's judgment on any ground appearing in the record, even if the ground is different from the one relied on by the district court." *ACEquip Ltd. v. Am. Eng'g Corp.*, 315 F.3d 151, 155 (2d Cir. 2003). We review the district court's rulings on sanctions pursuant to Rule 11 and the PSLRA for abuse of discretion. *Gurary v. Winehouse*, 235 F.3d 792, 798 (2d Cir. 2000).

We turn first to Amorosa's Section 14(a) and 10(b) claims. Section 14(a) of the Exchange Act provides that "[i]t shall be unlawful for any person, by use of the mails . . . or otherwise, in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a). Rule 14a-9 provides that "[n]o solicitation subject to this regulation shall be made by means of any proxy statement . . . containing any statement which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading. . . ." 17 C.F.R. § 240.14a-9(a).

Section 10(b) of the Exchange Act provides that no person or entity may, in connection with the purchase or sale of a security, "use or employ . . . any manipulative or deceptive device or contrivance in contravention of [a Securities and Exchange Commission rule]." 15 U.S.C. § 78j(b). Rule 10b-5 makes it unlawful, in connection with the purchase or sale of a security, "(a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading, or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. § 240.10b-5.

Amorosa claims that E&Y made false and misleading statements in a "clean" audit opinion of AOL's June 30, 1999 financial statement. For both his 14(a) and 10(b) claims, Amorosa has the burden of pleading and proving loss causation. *Grace v. Rosenstock*, 228 F.3d 40, 46-47 (2d Cir. 2000). For both claims, the district court concluded, based primarily on a previous district court's ruling on the same claims brought by other plaintiffs, *see In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 678-79 (S.D.N.Y. 2007), that Amorosa failed to allege a sufficient causal nexus between the purportedly false and misleading statements by E&Y and Amorosa's losses. On appeal, Amorosa argues that the district court erred because he has pleaded loss causation by showing that his stock lost value when AOLTW's share prices fell as information concerning AOLTW's accounting practices was gradually disseminated to the public.

> [A] misstatement or omission is the 'proximate cause' of an investment loss if the risk
> that caused the loss was within the zone of risk concealed by the misrepresentations and

4

omissions alleged by a disappointed investor. Thus, to establish loss causation, 'a plaintiff must allege . . . that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered,' *i.e.*, that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security.

*Lentell*, 396 F.3d at 173 (omission in original) (citation omitted) (quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001) (emphasis added in *Lentell*)).

Amorosa first contends, relying on *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336 (2005), that the disclosure need not be a "mirror image" disclosure of the harm, but rather, mere "leaking out" of information that points to the misrepresentation is sufficient to be deemed a "corrective event" that affected the value of his securities. Here, however, the district court correctly noted that Amorosa has not alleged any corrective disclosure regarding E&Y's June 1999 audit opinion, as none of the events identified as corrective disclosures by Amorosa in his complaint addresses AOL's accounting practices or in any way implicates E&Y's audit opinion. Amorosa therefore cannot establish that any misstatement or omission in E&Y's audit opinion was revealed to the market resulting in a diminution in the value of his securities.

Moreover, we agree with the district court that Amorosa could not establish loss causation on a "materialization of the risk" theory. When relying on such a theory, a plaintiff must allege some specific misstatements or omissions made by the defendant that can be connected to the plaintiff's eventual economic loss. *See Lentell*, 396 F.3d at 173. As the district court concluded, however, Amorosa's complaint does "not refer to any misstatements by [E&Y] and fail[s] to connect any fraud at AOL during the relevant time period to the auditor itself." J.A. 610. Because Amorosa's complaint fails to identify specifically any misstatements or omissions

5

and, in turn, the risk that was thereby concealed, Amorosa has failed to establish loss causation on a "materialization of the risk" theory.

We turn next to Amorosa's Section 11 claim. Section 11 of the Securities Act provides that, *inter alia*, any one who signed a Merger Registration Statement ("MRS"), was a director of or partner in the issuer at the time of filing, any accountant or appraiser involved in preparing or certifying the MRS, and any underwriter can be held liable if "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Amorosa alleges that E&Y is liable for misstatements in the June 1999 audit opinion incorporated by reference in AOLTW's MRS, filed with the Securities and Exchange Commission on February 11, 2000.

We agree with the district court that Amorosa's section 11 claim is either time-barred or fails for lack of loss causation. Claims under section 11 are barred if brought more than one year after actual or constructive notice of the claim. 15 U.S.C. § 77m. According to Amorosa's Second Amended Complaint, the first disclosure revealing E&Y's fraud was on January 12, 2001. The corrective disclosure date is the same as the constructive notice date for purposes of limitations. *Lentell*, 396 F.3d at 175 n.4. Amorosa did not file suit until May 29, 2003. His section 11 claim is thus time-barred. In support of the timeliness of his section 11 claim, Amorosa argues that the statute of limitations was not triggered until the *Washington Post* published a series of articles in July 2002 that revealed AOL's questionable accounting practices. If, however, we accept Amorosa's contention, his section 11 claim fails for lack of loss causation. Because AOLTW's share price went up between the date of the *Washington Post* articles and the date Amorosa filed suit, E&Y's alleged misstatement could not have resulted in

6

any losses. The absence of loss causation is an affirmative defense to a section 11 claim, but it is here apparent from the face of the complaint. It is thus a proper basis on which to dismiss the claim. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.").

As to Amorosa's "holder" claim under federal law, this Court agrees with defendant that the Supreme Court did not announce in *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006), that Rule 10b-5 provided a cause of action for a "holder" claim. Indeed, the Supreme Court specifically indicated that it was not revisiting the limitation of standing to purchasers and sellers of securities that had been previously announced in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975). *See Dabit*, 547 U.S. at 88 n.13 ("[W]e do not here revisit the *Blue Chip Stamps* Court's understanding of the equities involved in limiting the availability of private remedies under federal law."). Subsequent decisions of this Court have reaffirmed that there is no "holder" claim under federal securities law. *See, e.g.*, *Druck Corp. v. Macro Fund Ltd.*, 290 F. App'x 441, 445 (2d Cir. Aug. 26, 2008) (summary order) (affirming dismissal of 10b-5 claim on ground that plaintiff, as a mere "holder" of securities, lacked standing).

Finally, with respect to Amorosa's state law claims, the district court concluded that SLUSA preempted his state law claims. SLUSA was enacted to make "federal court the exclusive venue for class actions alleging fraud in the sale of certain covered securities and by mandating that such class actions be governed exclusively by federal law." *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101 (2d Cir. 2001). SLUSA defines a "covered class action" to

7

include "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which . . . damages are sought on behalf of more than 50 persons; and . . . the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." 15 U.S.C. §78bb(f)(5)(B). For substantially the reasons set forth by the district court in its opinion, we agree that Amorosa's suit falls within the definition of a "covered class action" and thus SLUSA precludes his state law claims.

We turn next to Gray's challenge to the district court's imposition of sanctions. Rule 11 of the Federal Rules of Civil Procedure provides that, by presenting a complaint to the court, the attorney signing or filing it "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." FED R. CIV. P. 11(b)(2)-(3).

Under the PSLRA, the district court is required to make specific findings regarding compliance by all parties and attorneys with Rule 11 in a case brought under the Exchange Act and mandates the imposition of sanctions if it determines that Rule 11 has been violated. 15 U.S.C. § 78u-4(c). If the court finds that Rule 11 has been violated, it "adopts a rebuttable presumption that the appropriate sanction for a complaint that substantially fails to comply with Rule 11(b) 'is an award to the opposing party of the reasonable attorneys' fees and other

8

expenses incurred in the action.'" *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 167 (2d Cir. 1999)) (quoting 15 U.S.C. § 78u-4(c)(3)(A)(ii)).

After reviewing the district court's decision for abuse of discretion, we identify no such abuse in the imposition of sanctions here and thus find no reason to disturb the district court's decision on appeal.

We have considered appellants' remaining arguments and find them to be without merit. Accordingly, for the reasons stated herein, the judgment of the district court is **AFFIRMED.**

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK