Josephine D. v William A.D. (2024 NY Slip Op 51008(U))

[*1]

Josephine D. v William A.D.

2024 NY Slip Op 51008(U)

Decided on August 5, 2024

Supreme Court, New York County

Hoffman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 5, 2024
Supreme Court, New York County

Josephine D., Plaintiff,

against
William A.D., Defendant.

Index No. [redacted]

For Plaintiff: Shannon R. Simpson, Esq., David V. Sanchez, Esq, Alyssa L. Cannizzaro, Esq., Cohen Clair Lans Greifer & Simpson LLP
For Defendant: Julie A. Rich, Esq., Angela G. Kim, Esq., Hartmann Doherty Rosa Berman & Bulbulia, LLP

Douglas E. Hoffman, J.

The following e-filed documents, listed by NYSCEF document number (Motion 005) 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 132, 133, 134, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 170, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 198, 201 were read on this motion to/for AMEND CAPTION/PLEADINGS.
In herein matrimonial action in a long-term (62 years) marriage, Wife moves, by Order to Show Cause, for the following relief:
(1) Pursuant to CPLR Rule 3025(b), granting Plaintiff leave to amend her Verified [*2]Complaint to add [non-party Ms. H.] as a necessary party to the instant action for divorce; and
(2) Pursuant to CPLR Rule 6401, appointing a receiver to protect Plaintiff's marital interests in various business entities owned or controlled by Defendant and/or non-party Ms. H., including, but not limited to, [redacted] (individually, each a 'Marital Business Entity' and collectively, the 'Marital Business Entities');
(3) Pursuant to DRL 249 and CPLR Rule 3403(a)(4), granting Plaintiff a preference to have this case promptly tried;
(4) Directing Defendant to pay to Plaintiff's attorneys, Cohen Clair Lans Greifer & Simpson LLP, the sum of $350,000 for interim counsel fees, without prejudice and with leave to make further applications; and
(5) For such other and further relief as this Court may deem just and proper.
[NYSCEF doc. 126, Order to Show Cause, mot. seq. 005]
Parties, each with counsel, and non-party Ms. H. (also with counsel) appeared on April [], 2024. An interim order was entered, including certain relief on consent, as stated in that order, including on Ms. H.'s consent, that the Automatic Orders (DRL 236(B)(2)(b) and 22 NYCRR 202.16-a (and quoted in the order) would apply to each of the parties and Ms. H. [NYSCEF doc. 134, entered April . . . 2024].
Husband then opposed remaining branches of Wife's motion and cross-moved, for the following relief:
a) Denying the requests set forth in Plaintiff's Order to Show Cause;
b) Compelling Plaintiff to participate in arbitration pursuant to CPLR 7503;
c) Vacating paragraph 3 of the April . . . 2024 Court Order pursuant to CPLR 2221;
d) For such other and further relief as may seem just and proper.
[NYSCEF doc. 143, Notice of Cross-motion, seq. 005]
The motion and cross-motion were briefed, and parties, each with counsel, and non-party Ms. H (also with counsel) appeared, including on June [], 2024. Both sides represent that the overall value of the business assets are in the $[redacted] million to $[redacted] million range, primarily related to [redacted]. The relevant entities are represented as [redacted] and their subsidiaries (the "Businesses").
At the June . . . 2024 appearance, among numerous other issues, the issue of Wife's receiver request was addressed in detail, and counsel were to submit an order on consent or on notice to provide full access to the parties' already retained forensic accounting experts (instead of a receiver at this time), and to do so contemporaneously, and with "enough time barring truly exigent circumstances for plaintiff to come back to court and say this is a fraudulent transaction":
THE COURT: I'm focusing on thinking about, which is really a forensic expert, accounting expert, to immerse themselves into all the marital assets essentially, the businesses and so forth, and fully understand how it's working. Your client would be required to give advance notice of any proposed transaction or one that's been recently actualized. That way, the financial expert can report back to The Court or then we can consider a receiver if, in fact, there's any abuse going on as opposed to someone coming in this as a receiver to manage all the properties. . . .
[Husband's counsel] MS. KIM: There has not been any advanced notice with respect to the two forensics with respect to any proposed transactions, but we already have two forensics involved, Your Honor. If Your Honor is inclined to have that layer of requirement, again, this is all about transparency. We have no objection to any sort of . . .
THE COURT: It has to be full contemporaneous financial information and enough time barring truly exigent circumstances for plaintiff to come back to court and say this is a fraudulent transaction. We need to stop this. Or because of what's happening here, we do need a receiver maybe for this property, maybe for the entire marital estate. We'll see. But right now, as a preliminary assessment only, the request for a receiver for the entire marital estate might be premature at this time. However, what's not premature is full oversight and disclosure and the ability to ensure that . . . nothing fraudulent takes place.
[Husband's counsel] MS. KIM: I have no objection to having [Wife's forensic expert] Mr. Pia as well as I would again renew my request to include my expert, Michael Saponara, to work together in this mechanism.
[6/ . . . /24 Tr. 10:10-15:4]
Both parties, by counsel, submitted proposed orders to effectuate the above framework. The branch of Wife's motion seeking a receiver is therefore denied as to the appointment of a receiver, without prejudice to renewal (if so advised and on appropriate support), and is granted to the extent stated herein (details of the order are infra, based on the June . . . , 2024 appearance and parties' submissions).
Wife also seeks permission to file an Amended Complaint, to join Ms. H., to whom Husband allegedly transferred 49% of the Business interests. As stated supra, Ms. H. (with counsel) consented to the Automatic Orders. Defendant Husband states that it would not be necessary to join Ms. H. because, he alleges, any award in the matrimonial action that could possibly involve Ms. H. could be paid by Husband to Wife from Husband's assets.
This is not necessarily true, however, as Husband purportedly transferred 49% of the Business interests to Ms. H. and another 49% to the parties' (adult) son Billy D., allegedly retaining only 2% for himself. Husband then purportedly purchased back Billy's interest, which buy-back Billy is contesting in a separate action, not before the undersigned (which controversy may have been referred to arbitration). To the extent that there is at least some possibility that Husband and Ms. H. are able to keep that 49% "shielded" in Ms. H.'s control, but Husband does not receive or retain 49% "back" from Billy, any equitable distribution award in this action might (in that case) be enforceable only against Husband's then-remaining 2% (in such a case), which would then make Husband virtually judgment proof in this action without joinder of Ms. H.
Joinder of a third-party recipient of marital property is permitted and may be necessary, under appropriate circumstances:
It has been held that in action for divorce, where it is alleged that individuals are third party transferees of marital property subject to a distribution dispute, it is appropriate to determine that such individuals are necessary parties to the action, and to grant leave to add them as party defendants to the pending divorce action. Solomon v. Solomon, 136 AD2d 697 (2nd Dept. 1988); Schmidt v. Schmidt, 99 AD2d 775 (2nd Dept. 1984); See, CPLR §§ 1001, 1003.
In the instant matter, defendant transferred the marital residence to his parents in April [*3]2010. While defendant asserts that the transfer was made in accordance with his default in paying back a loan his parents made to him, and that the marital residence, purchased prior to the date of marriage, is his separate property, in which plaintiff does not have any interest, those issues have not yet been determined. Therefore, the Court finds that the defendant's parents, P. D. and R. D., are necessary parties to this action, and plaintiff is granted leave to file and serve a supplemental summons and a second amended verified complaint which adds them as party defendants.
M.J.D. v W.O.D., 33 Misc 3d 1213(A) [Sup. Ct., Westchester Cnty 2011]
Similarly, in Shurka v Shurka, 100 AD3d 566, 566 [1st Dept 2012], the Appellate Division upheld an order allowing wife to join the Chief Financial Officer of an organization that held husband's assets for reasons stated therein, citing CPLR 1001, 1003; Solomon v Solomon, 136 AD2d 697. See also Jackson v. Brinkman, 10 Misc 3d 1068(A) [Sup. Ct., Kings Cnty 2006] ("With respect to [ex-husband's] claim of a fraudulent conveyance by [then-wife] to her mother of the marital residence, [he] could have easily moved to add his mother-in-law as a party defendant to the divorce action. Solomon v Solomon, 136 AD2d 697 (1988). Jason now has to live with his choice not to have pursued in the underlying matrimonial action his claims against [wife and mother-in-law] with respect to the transfer of title").
Here, Ms. H. apparently received 49% of Businesses from Husband that were indisputably marital property, and it is not clear whether there are sufficient other assets to "compensate" for such a transfer. Further, although Ms. H. consented to be bound by the Automatic Orders, it is also not clear whether an enforcement action (if one is ever needed to be brought) regarding any violation of said orders could be brought here without joinder. Under the circumstances, much as in cases cited herein, Ms. H. is a necessary and indispensable party, and Wife shall be permitted to amend the complaint to join Ms. H. as a necessary party regarding the financial claims ancillary to the divorce action herein. 
Wife seeks a trial "preference" in herein action, due to Wife's age and health. Neither party has filed a Note of Issue, and neither side is alleging that discovery is complete so that a trial could commence. Indeed, in opposition to this branch, Husband details the remaining discovery and its potential complexity. Therefore, this request is premature, and is denied without prejudice. The parties have already set a discovery schedule, and the Court expects timely compliance with all deadlines, barring truly exigent circumstances requiring a short delay under the circumstances. 
Wife seeks $350,000 pendente lite counsel fees. Attached via NYSCEF are her counsel's qualifications, redacted (for privilege) counsel invoices, retainer, and Statement of Net Worth. At the time of filing of the motion, Wife had "an outstanding balance with our firm of $95,975.03," and counsel detailed remaining work to be done (NYSCEF doc. 118), including obtaining discovery, taking depositions, and engaging in trial preparation for the "financial complex" assets herein. Husband opposes this fee application, although separately stating that extensive complex discovery remains to be done, in opposition to Wife's request for a trial preference.
Pursuant to DRL § 237(a), the Court in a matrimonial action:
. . . may direct the person or persons maintaining the action, to pay counsel fees and fees and expenses of experts directly to the attorney of the other spouse to enable the other party to carry on or defend the action or proceeding as, in the court's discretion, justice [*4]requires, having regard to the circumstances of the case and of the respective parties. There shall be rebuttable presumption that counsel fees shall be awarded to the less monied spouse. In exercising the court's discretion, the court shall seek to assure that each party shall be adequately represented and that where fees and expenses are to be awarded, they shall be awarded on a timely basis, pendente lite, so as to enable adequate representation from the commencement of the proceeding.
An award of interim counsel fees is within the sound discretion of the trial court, DeCabrera v Cabrera-Rosete, 70 NY2d 879, 881 [1987], and the issue is controlled by the equities and circumstances of the individual case. Johnson v Chapin, 12 NY3d 461, 467 [2009]. The purpose of DRL § 237(a) is to "redress the economic disparity between the monied spouse and the non-monied spouse." O'Shea v O'Shea, 93 NY2d 187, 190 [1999]. In determining whether to award interim attorney's fees, the court should review the financial circumstances of both parties, as well as all the other circumstances of the case, which may include the relative merit of the parties' positions. DeCabrera v Cabrera-Rosete, supra. See also Yao v Kao-Yao, 147 AD3d 624 [1st Dept 2017]. "'An appropriate award of attorney's fees should take into account the parties' ability to pay, the nature and extent of the services rendered, the complexity of the issues involved, and the reasonableness of the fees under all of the circumstances.'" DiBlasi v DiBlasi, 48 AD3d 403, 405 [2d Dept], lv. app. denied, 10 NY3d 716 [2008], quoting Grumet v Grumet, 37 AD3d 534, 536 [2d Dept 2007] [citations omitted]. The court may also consider whether either party has engaged in litigation causing delay or unnecessary legal proceedings. Prichep v Prichep, 52 AD3d 61, 64 [2d Dept 2008].
It is undisputed that Husband is the more monied spouse, with access and control of millions (if not [redacted] millions) of dollars. It is also undisputed that the overall marital estate will be more than sufficient for reallocation of the pendente lite counsel fee award, whether at trial or settlement. Husband does not object to any specific line item in Wife's invoices.
Husband does not submit his attorneys' invoices or payments. Husband's failure to submit his attorneys' invoices or whether they have been paid and from where, leaves the court to assume that Husband's legal bills are at least as high as Wife's and that they are being paid. Sullivan v Sullivan, 155 Misc 2d 440, 445 [Sup. Ct. 1992, NY Cnty,] ("husband has not disclosed his own counsel fee obligations, [therefore] it may be presumed that his are equal to or greater than those of the wife") aff'd, 201 AD2d 417 [1st Dept 1994]; Wolf v Wolf, 160 AD2d 555 [1st Dept 1990] ("Since defendant has not disclosed his own fee arrangements, it may be presumed his obligations and payments are equal to or greater than those of plaintiff"). 
Reasonable short-term prospective counsel fees are appropriate under all of the circumstances discussed above. Soiefer v Soiefer, 17 AD3d 268, 269 [1st Dept 2005] [in consolidated matrimonial action, upholding award of attorneys' fees, including an "appropriate advance on those and other anticipated fees"]; Feinstein v Merdinger, 305 AD2d 115 [1st Dept 2003] [upholding fees in a post-judgment custody case, stating that "Attorneys' fees . . . can be awarded for prospective work"]; Avedon v Avedon, 270 AD2d 65, 66 [1st Dept] [reversing denial of prospective counsel fees] lv. dismissed, 95 NY2d 902 [2000]. Prospective counsel fees are not a "blank check," however, and should be limited to fees either "actually incurred or reasonably anticipated to be incurred." Messinger v Messinger, 24 AD3d 631, 632 [2d Dept 2005]. There is an appropriate basis made for the requested pendente lite fees, subject to meaningful reallocation at trial or settlement.
These fees are to be paid by Husband directly to Wife's attorney Cohen Clair Lans Greifer & Simpson LLP, 919 Third Avenue, 34th Floor New York, New York 10022 in the following installments: $100,000 by August 10, 2024; $100,000 by September 10, 2024; and $150,000 by October 1, 2024. Charpié, 271 AD2d 169. This award is made subject to meaningful reallocation at trial or settlement, and without prejudice to further applications for additional sums, as necessary at time of trial or sooner. Ritter v Ritter, 135 AD2d 421 [1st Dept 1987]; Jorgensen v Jorgensen, 86 AD2d 861 [2d Dept 1982]. 
Husband, on his cross-motion, seeks an order compelling Wife to participate in arbitration pursuant to CPLR 7503. Husband is correct that certain claims brought by the parties' (adult) son Billy D., in another action in the Court, before a different Justice of this Court, have been directed to arbitration. Although not entirely clear, it appears that Husband concedes that he is not seeking to send all of Wife's claims in herein action to arbitration, but to the extent that she is making corporate derivative claims, those may not be appropriate in the matrimonial action.
The Court does not disagree that this action is not an appropriate forum for derivative claims (by Wife as a shareholder of the companies, as opposed to direct claims as a spouse, or otherwise). Here, neither party attaches the LLC operating agreement for the relevant entities, nor did the parties state in the moving papers or opposition to the motion whether the LLC entities are New York, Delaware, or other state- or country-based ones. The scope and extent of potentially relevant fiduciary duties may be described, or potentially waived, at least in part, in the LLC agreement (depending on relevant law of the state). See, e.g., Est. of Calderwood v ACE Grp. Int'l LLC, 157 AD3d 190, 198 [1st Dept 2017] [Delaware LLC statute "allows LLCs to waive some fiduciary duties, [if] so stated in the LLC Operating Agreement," although the "issue [of] whether the LLC statute does—or does not—impose default fiduciary duties is one about which reasonable minds could differ"] [citing Gatz Properties, LLC v Auriga Capital Corp., 59 A3d 1206, 1219 [Del 2012]]; see also NY LLC § 417 [similar]. At this juncture, the Court reviews corporate fiduciary law of New York, and to the extent informative, of Delaware.
A "derivative" shareholder claim would be one filed on behalf of all disinterested minority shareholders, as opposed to a specific injury to this specific shareholder only (i.e. as CEO's soon-to-be-divorced wife):
It is black letter law that a stockholder has no individual cause of action against a person or entity that has injured the corporation. This is true notwithstanding that the wrongful acts may have diminished the value of the shares of the corporation, or that the shareholder incurs personal liability in an effort to maintain the solvency of the corporation (Citibank v Plapinger, 66 NY2d 90, 93 n., 495 N.Y.S.2d 309, 485 N.E.2d 974 [1985]; Niles v New York Cent. & Hudson Riv. R.R. Co., 176 NY 119, 68 N.E. 142 [1903] ), or that the wrongdoer may ultimately share in the recovery in a derivative action if the wrongdoer owns shares in the corporation (Glenn v Hoteltron Sys., Inc., 74 NY2d 386, 547 N.Y.S.2d 816, 547 N.E.2d 71 [1989] ). An exception exists, however, where the wrongdoer has breached a duty owed directly to the shareholder which is independent of any duty owing to the corporation (Abrams v Donati, 66 NY2d 951, 498 N.Y.S.2d 782, 489 N.E.2d 751 [1985]; General Rubber Co. v Benedict, 215 NY 18, 109 N.E. 96 [1915] ). This is a narrow exception, and [movant]'s cross claim must be factually supportable by more than complaints that conflate his derivative and individual rights (Abrams, 66 NY2d at 953—954, 498 N.Y.S.2d 782, 489 N.E.2d 751). In addition, [movant] may not obtain a recovery that otherwise duplicates or belongs to the [*5]corporation (Herbert H. Post & Co. v Sidney Bitterman, Inc., 219 AD2d 214, 225, 639 N.Y.S.2d 329 [1st Dept.1996] ).
Recognizing the difficulty in determining whether a claim is direct or derivative in the recent case of Yudell v Gilbert, 99 AD3d 108, 949 N.Y.S.2d 380 [1st Dept.2012], this court adopted the test developed by the Supreme Court of Delaware in Tooley v Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1039 [Del.2004] as a common sense approach to resolving such issues. We held that the Delaware test is consistent with existing New York State law. In order to distinguish a derivative claim from a direct one, the court considers "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders individually)" (Yudell, 99 AD3d at 114, 949 N.Y.S.2d 380, quoting Tooley, 845 A.2d at 1033). If there is any harm caused to the individual, as opposed to the corporation, then the individual may proceed with a direct action (Gjuraj v Uplift Elev. Corp., 110 AD3d 540, 973 N.Y.S.2d 172 [1st Dept.2013] ). On the other hand, even where an individual harm is claimed, if it is confused with or embedded in the harm to the corporation, it cannot separately stand (Abrams, at 953—954, 498 N.Y.S.2d 782, 489 N.E.2d 751 [conspiracy to terminate employment of corporation's president mixed with claim for diversion of corporate assets was properly dismissed as a derivative action]; Yudell, at 115, 949 N.Y.S.2d 380 [the plaintiff's direct claims, embedded in claims for partnership waste and mismanagement, were properly dismissed as derivative claims]; Hahn v Stewart, 5 AD3d 285, 773 N.Y.S.2d 297 [1st Dept.2004] [claims that the corporation's damaged reputation diminished the value of former corporate shareholder's shares dismissed on the grounds that such allegations plead a wrong to the corporation only, for which a shareholder can only sue derivatively] ).
Serino v Lipper, 123 AD3d 34, 39—40 [1st Dept 2014].
Here, however, Wife's claims are direct — she is alleging (in part) being injured by her Husband's alleged transfer of marital assets to Ms. H. to deprive Wife of her share of marital equitable distribution.
Wife's claims here, as discussed herei, are direct claims against her Husband in this matrimonial action, which are separate from either general shareholder claims, or claims pursuant to an alleged operating agreement with its arbitration provisions (Wife is not alleged to be a party to that agreement). Although it is possible for parties to consent to binding financial arbitration of the financial issues ancillary to a matrimonial action (Esther L. v. Chaim L., 66 Misc 3d 1229(A) [Sup. Ct., NY Cnty 2020], collecting cases), here, there is no such agreement or even an allegation of such an agreement. Therefore, there is not any basis to require arbitration of the financial claims ancillary to the matrimonial action.
Husband also seeks to vacate paragraph 3 of the April . . . , 2024 Court Order pursuant to CPLR 2221. That paragraph states, "Plaintiff consents that Defendant may accept an offer for the sale of the apartment known as [redacted], provided that the sale proceeds are held in escrow (unless counsel for both parties agree to a disposition of the sale proceeds)." [NYSCEF doc. 134].
Husband now alleges that, although he included this apartment on his Statement of Net Worth in herein action, nevertheless, he had actually had the Businesses transfer this apartment [*6]to a business partner [redacted] several days after service of Wife's complaint in herein action, but apparently, which transfer agreement had been planned for months beforehand, as an exchange for Mr. [redacted]'s interests in the Businesses, together with a $1 million cash transfer. Husband acknowledges the $1 million cash transfer, but states that it was not recorded at the time. Separately, Husband states in his papers that another business-owned [asset] has been recently sold with just over $10 million realized and held in two bank accounts. To the extent that ownership of [apartment] is not entirely clear at this time (and may well have been transferred to Mr. [redacted]), to the extent that paragraph 3 of the April . . . 2024 Order already permits a sale of apartment . . . subject to an escrow requirement, the funds from the "other" recently sold [asset] may be placed in escrow by Husband in lieu of the approximately $[redacted] million listed sales price for the . . . . apartment and the $1 million cash transfer Husband alleges was simultaneous to this business partner, although not recorded at that time.
Accordingly, upon the aforementioned papers, prior proceedings in this matter, and for the reasons stated herein, IT IS ORDERED, that motion sequence 005, filed by Plaintiff Wife is decided as follows: 
1. Branch (1) is granted, Plaintiff is granted leave to amend her Verified Complaint to add [non-party Ms. H.] as a necessary party regarding the financial claims ancillary to the matrimonial action herein. Any such permitted Amended Complaint shall be filed (if at all) by August 30, 2024 (with service and answer dates pursuant to CPLR).
2. Branch (2) is granted to the following extent (without prejudice to later application for a receiver, if so advised and appropriately supported at that time):
a. Commencing immediately upon signing of this Order, Defendant William D., in exercise of all due diligence shall provide to each of the parties' forensic accountants: (i) Michael Saponara of Financial Research Associates, and (ii) Kenneth Pia of Marcum, each via email, an itemized list of the expenses of [the Businesses] that will be paid by check, including the amount and purpose of such expense, no later than two (2) weeks before such checks are remitted for payment of the Businesses' expenses; Defendant's exercise of all due diligence shall include, without limitation, permitting, instructing, and fully authorizing the accountants and bookkeepers for the Businesses to send this information contemporaneously, and no less frequently than weekly to Mr. Pia and Mr. Saponara. The email may be a link to a password-protected dropbox, with the password separately provided.
b. On or before August 10, 2024, and then, no later than by the 5th day of each month thereafter, Defendant shall deliver (or shall authorize others to do so on his behalf), via email, the preceding month's general ledgers and profit/loss statements, together with underlying documents, in native form, that were used to produce said general ledgers and profit/loss statements, of the Businesses to Defendant's retained forensic expert, Michael Saponara of Financial Research Associates, and to Plaintiff's retained forensic expert, Kenneth Pia of Marcum, for review. The email may be a link to a password-protected dropbox, with the password separately provided.
c. Defendant shall also provide advance written notice of the following, to each of Defendant's counsel (who shall share the information with Plaintiff's counsel), and to Defendant's retained forensic expert, Michael Saponara of Financial Research Associates, and to Plaintiff's retained forensic expert, Kenneth Pia of Marcum:
i. Defendant shall provide advance written notice to the Plaintiff of any sale of any of real [*7]property owned by any of the Businesses no less than thirty (30) days prior to entering into a contract for such sale;
ii. Defendant shall provide written notice to the Plaintiff of any transfer of any membership interests or shares in any of the Businesses no less than thirty (30) days prior to such transfer;
iii. In addition to supra, in the event that Defendant or others plan to sell, transfer, or in any way encumber, any ownership interest in or asset of the Businesses, Defendant shall provide advance notice of such desired sale, transfer, and/or encumbrance, including the proposed terms and schedule therefore; any such disclosure shall be made as far in advance as practicable and at least three weeks in advance, unless there are specific exigent circumstances, in which case, the exigent circumstances shall be stated in the disclosure, including date when Defendant was first informed of the proposed transaction and the exigency.
d. Parties, counsel, and financial experts shall coordinate receipt of herein information, and to the extent that if Marcum believes in good faith that it requires additional documentation in order to adequately review the noticed transactions, Marcum may request additional necessary documentation from Defendant via Financial Research Associates and counsel, and Defendant and Financial Research Associates shall respond to such request within seven days (unless a shorter timeline is appropriate given an exigent transaction).
e. Plaintiff may seek, if so advised, an appropriate Court order (whether that funds be held in escrow, a proposed transaction be temporarily restrained, or other relief, if so advised and supported) in connection with any such planned transaction, but at this time, Plaintiff's written consent is not required by this Court order, unless the specific transaction would have required Plaintiff's written consent separate from herein motion and order.
3. Branch (3) is denied without prejudice;
4. Branch (4) is granted to the following extent: Husband shall pay $350,000 in pendente lite counsel fees directly to Wife's attorney Cohen Clair Lans Greifer & Simpson LLP, 919 Third Avenue, 34th Floor New York, New York 10022 in the following installments: $100,000 by August 10, 2024; $100,000 by September 10, 2024; and $150,000 by October 1, 2024; this award is made subject to meaningful reallocation at trial or settlement, and without prejudice to further applications for additional sums, as necessary at time of trial or sooner. Upon the aforementioned papers, prior proceedings in this matter, and for the reasons stated herein, IT IS FURTHER ORDERED, that cross-motion on sequence 005, filed by Defendant Husband is decided as follows: 
1. Branch (a) is resolved as stated supra regarding motion-in-chief;
2. Branch (b) is denied as stated supra;
3. Branch (c) is granted solely to the extent that Husband may choose to place $10 million (whether realized from a recent separate [asset] sale or otherwise), thus satisfying the escrow requirements of paragraph 3 of the April . . . 2024 order (and thus, once the escrow is thus funded, there shall be no requirement that proceeds of the sale from apartment . . . be placed in escrow); Husband shall notify Wife of the escrow and [*8]provide appropriate documentation.
This original Decision and Order is filed by the Court on NYSCEF, which shall constitute filing and entry. Plaintiff is hereby directed to file a Notice of Entry of herein Decision and Order within five days.
DATE 08/05/2024
DOUGLAS E. HOFFMAN, J.S.C.